## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

JAYNE RENE BENNETT and JANE B. HUGHES,

     Plaintiffs,

-vs-                    Case No.

EQUIFAX INFORMATION SERVICES LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION LLC; and AMERICAN PACIFIC MORTGAGE CORPORATION,

     Defendants.

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

COME NOW Plaintiffs, JAYNE RENE BENNETT (hereinafter "Ms. Bennett") and JANE B. HUGHES (hereinafter Ms. Hughes") (hereinafter collectively "Plaintiffs"), by and through their undersigned counsel, for their cause of action against Defendants, EQUIFAX INFORMATION SERVICES LLC (hereinafter "Equifax"); EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter "Experian"); TRANS UNION LLC (hereinafter "Trans Union"); and AMERICAN PACIFIC MORTGAGE CORPORATION (hereinafter "APM") (hereinafter collectively "Defendants"), and in support thereof respectfully alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.

1

## **PRELIMINARY STATEMENT**

1.      This is an action for actual damages, statutory damages, punitive damages, costs, and attorney's fees brought pursuant to the FCRA.

2.      Today in America there are three major consumer reporting agencies, Equifax Information Services LLC (hereinafter "Equifax"), Trans Union LLC (hereinafter "Trans Union"), and Experian Information Solutions, Inc. (hereinafter "Experian") (hereinafter collectively "CRAs").

3.      Consumer reporting agencies that create consumer reports, like the CRAs, are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. It is not enough for them to simply parrot information they receive from entities, particularly where a consumer makes a dispute about information reported.

4.      When a consumer, like Plaintiffs, disputes information through the agencies, those disputes are transmitted to the party furnishing the information. The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify.

5.      The Consumer Financial Protection Bureau has noted, "experience indicates that [Credit Reporting Agencies] lack incentives and under-invest in

2

accuracy". Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).

## JURISDICTION AND VENUE

6.     Jurisdiction for this Court is conferred by 28 U.S.C. § 1331, as this action involves violations of the FCRA.

7.     Venue is proper for this Court pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

8.     Venue is proper in this District as Plaintiffs are natural persons and residents of Charlotte County in the State of Florida; Defendants transact business within this District; and violations described in this Complaint occurred in this District.

9.     Plaintiffs are "consumer" as defined by 15 U.S.C. § 1681a(c).

10.     Equifax is a corporation with its principal place of business in the State of Georgia and is authorized to do business in the State of Florida through its registered agent, Corporation Service Company, located at 1201 Hays Street, Tallahassee, Florida 32301.

11.     Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). Equifax is regularly engaged in the business of assembling, evaluating and

disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

12.     Equifax disburses such consumer reports to third parties under contract for monetary compensation.

13.     Experian is a corporation with its principal place of business in the State of California and is authorized to do business in the State of Florida through its registered agent, C T Corporation System, located at 1200 South Pine Island Road, Plantation, Florida 33324.

14.     Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). Experian is regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

15.     Experian disburses such consumer reports to third parties under contract for monetary compensation.

16.     Trans Union is a corporation with its principal place of business in the State of Illinois and is authorized to do business in the State of Florida through its registered agent, Corporation Service Company, located at 1201 Hays Street, Tallahassee, Florida 32301.

17.     Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). Trans Union is regularly engaged in the business of assembling,

evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

18.     Trans Union disburses such consumer reports to third parties under contract for monetary compensation.

19.     APM is a corporation with its principal place of business in the State of California and is authorized to do business in the State of Florida through its registered agent, URS Agents, LLC, located at 3458 Lakeshore Drive, Tallahassee, Florida 32312.

20.     APM is a "furnisher of information" as that term is used in 15 U.S.C § 1681s-2.

21.     APM furnished information about Plaintiff to the CRAs that was inaccurate.

## FACTUAL ALLEGATIONS

22.     Plaintiffs had a joint account with APM, partial account number 414701300* (hereinafter "APM Account"), as to a mortgage loan.

23.     In or about 2021, Plaintiffs co-signed a mortgage loan with non-party, BSI Financial.

24.     In or about September 2022, Plaintiffs entered into a forbearance agreement with BSI Financial which was approved through December 31, 2022.

25.     In or about December 2022, Plaintiffs and BSI Financial agreed to extend the forbearance an additional three (3) months through March 31, 2023.

26.     In or about January 2023, BSI Financial sold Plaintiffs' mortgage to APM.

27.     On or about February 7, 2023, within the forbearance period, Plaintiffs received correspondence from APM which stated the APM Account was in default in the amount of $13,297.

28.     Immediately, Plaintiffs contacted APM and provided the current forbearance agreement.

29.     Despite providing proof of the forbearance agreement, on or about April 15, 2023, Plaintiffs received notice from APM of moving to foreclosure if default is not paid.

30.     In or about April 2023, Plaintiffs reviewed their credit files and observed that the APM Account was inaccurately reported with a status of past due.

31.     On or about April 23, 2023, Plaintiffs reported the inaccurate reporting to the Consumer Financial Protection Bureau ("CFPB"), File ID 230423-10925084.

32.     In the CFPB report, Plaintiffs detailed the fact that the APM Account was reported to their credit files with an erroneous pay status and requested an investigation into the inaccurate reporting.

33.     Under 15 U.S.C. § 1681e(3) of the FCRA, credit reporting agencies, such as the CRAs, are required to review certain consumer complaints about inaccurate information that are originally sent to the CFPB.

34.     Upon information and belief, the CRAs failed to review the CFPB complaint that Plaintiffs filed and continued to inaccurately report the APM Account on their credit reports.

**FCRA Allegations as to Ms. Bennett**

35.     Due to the inaccurate reporting, in or about April/May 2023, Ms. Bennett contacted Trans Union to dispute the erroneous pay status of the APM Account.

36.     On or about May 18, 2023, Ms. Bennett received dispute results from Trans Union which stated the APM Account was verified and updated. However, the APM Account continued to be reported with an erroneous status of 120 days past due.

37.     Trans Union failed to do any independent investigation into Ms. Bennett's disputes, but rather parroted information it received from the furnisher.

38.     Trans Union never attempted to contact Ms. Bennett during the alleged investigation.

39.     Upon information and belief, Trans Union notified APM of Ms. Bennett's dispute. However, APM failed to conduct a reasonable investigation and

merely compared its own erroneous data to that provided by Trans Union in connection with the dispute investigation.

40.    Due to the continued inaccurate reporting, on or about June 20, 2023, Ms. Bennett submitted online a written dispute letter to the CRAs. In the letter, Ms. Bennett explained that the pay status of the APM Account was inaccurate. In the letter, Ms. Bennett included copies of the BSI Financial forbearance agreement, BSI Financial forbearance extension, and other supporting documents.

41.    On or about June 23, 2023, Ms. Bennett received dispute results from Equifax which stated the APM Account was verified as accurate.

42.    Equifax failed to do any independent investigation into Ms. Bennett's disputes, but rather parroted information it received from the furnisher.

43.    Equifax never attempted to contact Ms. Bennett during the alleged investigation.

44.    Upon information and belief, Equifax notified APM of Ms. Bennett's dispute. However, APM failed to conduct a reasonable investigation and merely compared its own erroneous data to that provided by Equifax in connection with the dispute investigation.

45.    On or about June 29, 2023, Ms. Bennett received dispute results from Experian which stated the APM Account was verified and updated. However, the

APM Account continued to be reported with an inaccurate status of 150 days past due.

46.    Experian failed to do any independent investigation into Ms. Bennett's disputes, but rather parroted information it received from the furnisher.

47.    Experian never attempted to contact Ms. Bennett during the alleged investigation.

48.    Upon information and belief, Experian notified APM of Ms. Bennett's dispute. However, APM failed to conduct a reasonable investigation and merely compared its own erroneous data to that provided by Experian in connection with the dispute investigation.

49.    Despite confirmation of delivery, Ms. Bennett did not receive dispute results from Trans Union.

50.    Trans Union failed to do any independent investigation into Ms. Bennett's disputes, and never attempted to contact Ms. Bennett.

51.    On or about July 24, 2024, Ms. Bennett obtained copies of her credit reports from the CRAs, and to her relief, the pay status of the APM Account was reported correctly.

**FCRA Allegations as to Ms. Hughes**

52.    Due to the continued inaccurate reporting, on or about June 20, 2023, Ms. Hughes submitted online a written dispute letter to the CRAs. In the letter, Ms.

Hughes explained that the pay status of the APM Account was inaccurate. In the letter, Ms. Hughes included copies of the BSI Financial forbearance agreement, BSI Financial forbearance extension, and other supporting documents.

53.     On or about June 29, 2023, Ms. Hughes received dispute results from Experian which stated the APM Account was verified and updated. However, the APM Account continued to be reported with an inaccurate status of 150 days past due.

54.     Experian failed to do any independent investigation into Ms. Hughes's disputes, but rather parroted information it received from the furnisher.

55.     Experian never attempted to contact Ms. Hughes during the alleged investigation.

56.     Upon information and belief, Experian notified APM of Ms. Hughes's dispute. However, APM failed to conduct a reasonable investigation and merely compared its own erroneous data to that provided by Experian in connection with the dispute investigation.

57.     On or about July 19, 2023, Ms. Hughes received dispute results from Trans Union which stated the APM Account was deleted from her credit report.

58.     Despite confirmation of delivery, Ms. Hughes did not receive dispute results from Equifax.

59.     Equifax failed to do any independent investigation into Ms. Hughes's disputes, and never attempted to contact Ms. Hughes.

60.     On or about July 24, 2024, Ms. Hughes obtained copies of her credit reports from the CRAs, and to her relief, the APM Account was reported correctly.

61.     As a result of the inaccurate credit reporting, Plaintiffs suffered damages, including, but not limited to:

    i.    Monies lost by attempting to fix her credit. Plaintiffs suffered actual damages in postage paid, wasted ink and paper, and wasted time;

    ii.    Loss of time attempting to cure the errors;

    iii.    Mental anguish, added stress, aggravation, embarrassment, sleepless nights, and other related impairments to the enjoyment of life; Plaintiffs are being physically affected by Defendants' actions;

    iv.    Reduction in credit score; and

    v.    Apprehensiveness to apply for new credit due to the fear of rejection.

## CAUSES OF ACTION

### COUNT I
**Violation of 15 U.S.C. § 1681e(b) as to**
**Defendant, Equifax Information Services LLC (Negligent)**

62.     Plaintiffs re-allege and incorporate paragraphs one (1) through sixty-one (61) above as if fully stated herein.

11

63.    Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintains concerning Plaintiffs.

64.    Equifax allowed for a furnisher to report inaccurate account information to Plaintiffs' credit files.

65.    Upon information and belief, Equifax does not allow its representatives to call consumers, like Plaintiffs, during the dispute process or call witnesses with knowledge about the dispute.

66.    Equifax selects to just parrot the information provided by the Furnisher and to avoid conducting re-investigations.

67.    Equifax chooses the illegitimate parroting of information despite consumers (like Plaintiffs) providing ample evidence.

68.    As a result of this conduct, action, and inaction of Equifax, Plaintiffs suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; reduction in credit score; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

69. The conduct, action, and/or inaction of Equifax was negligent, rendering it liable for actual damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

70. Plaintiffs are entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiffs, JAYNE RENE BENNETT and JANE B. HUGHES, respectfully request that this Court award actual damages against Defendant, EQUIFAX INFORMATION SERVICES LLC; award Plaintiffs their attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## COUNT II
### Violation of 15 U.S.C. § 1681e(b) as to
### Defendant, Equifax Information Services LLC (Willful)

71. Plaintiffs re-allege and incorporate paragraphs one (1) through sixty-one (61) above as if fully stated herein.

72. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintains concerning Plaintiffs.

73.    Equifax allowed for a furnisher to report inaccurate account information to Plaintiffs' credit files.

74.    Upon information and belief, Equifax does not allow its representatives to call consumers, like Plaintiffs, during the dispute process or call witnesses with knowledge about the dispute.

75.    Equifax selects to just parrot the information provided by the Furnisher and to avoid conducting re-investigations.

76.    Equifax chooses the illegitimate parroting of information despite consumers (like Plaintiffs) providing ample evidence.

77.    As a result of this conduct, action, and inaction of Equifax, Plaintiffs suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; reduction in credit score; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

78.    The conduct, action and/or inaction of Equifax was willful, rendering it liable for actual or statutory damages, and punitive damages, in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

79.    Plaintiffs are entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

14

WHEREFORE, Plaintiffs, JAYNE RENE BENNETT and JANE B. HUGHES, respectfully request that this Court award actual or statutory damages and punitive damages against Defendant, EQUIFAX INFORMATION SERVICES LLC; award Plaintiffs their attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

**COUNT III**
**Violations of 15 U.S.C. § 1681i as to**
**Defendant, Equifax Information Services LLC (Negligent)**

80. Plaintiffs re-allege and incorporate paragraphs one (1) through sixty-one (61) above as if fully stated herein.

81. After receiving Ms. Bennett's disputes, Equifax violated 15 U.S.C. § 1681i by: (i) failing to delete inaccurate information in Ms. Bennett's credit file after receiving notice of such inaccuracies; (ii) failing to conduct a lawful and reasonable reinvestigation into Ms. Bennett's disputes; (iii) failing to maintain reasonable procedures with which to filter and verify disputed information in Ms. Bennett's credit file; (iv) failing to review and consider all relevant information submitted by Ms. Bennett in the disputes; and (v) relying upon verification from a source it has to know is unreliable.

82. Despite the large amount of information and documentation produced by Ms. Bennett demonstrating the inaccurate reporting, Equifax failed to conduct

independent investigations into Ms. Bennett's disputes and simply transferred the duty to investigate to the furnisher.

83.     Ms. Bennett provided Equifax with the information it needed to confirm the pay status of the APM tradeline was inaccurate. Equifax ignored this information and failed to conduct a thorough investigation into her disputes or otherwise make her credit file accurate.

84.     As a direct result of this conduct, action and/or inaction of Equifax, Ms. Bennett suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; reduction in credit score; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

85.     The conduct, action, and/or inaction of Equifax was negligent, rendering it liable for actual damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

86.     Ms. Bennett is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to § 1681o.

WHEREFORE, Plaintiff, JAYNE RENE BENNETT, respectfully requests that this Court award actual damages against Defendant, EQUIFAX INFORMATION SERVICES LLC; award Plaintiff her attorney's fees and costs;

award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## COUNT IV
### Violations of 15 U.S.C. § 1681i as to
### Defendant, Equifax Information Services LLC (Willful)

87.    Plaintiffs re-allege and incorporate paragraphs one (1) through sixty-one (61) above as if fully stated herein.

88.    After receiving Ms. Bennett's disputes, Equifax violated 15 U.S.C. § 1681i by: (i) failing to delete inaccurate information in Ms. Bennett's credit file after receiving notice of such inaccuracies; (ii) failing to conduct a lawful and reasonable reinvestigation into Ms. Bennett's disputes; (iii) failing to maintain reasonable procedures with which to filter and verify disputed information in Ms. Bennett's credit file; (iv) failing to review and consider all relevant information submitted by Ms. Bennett in the disputes; and (v) relying upon verification from a source it has to know is unreliable.

89.    Despite the large amount of information and documentation produced by Ms. Bennett demonstrating the inaccurate reporting, Equifax failed to conduct independent investigations into Ms. Bennett's disputes and simply transferred the duty to investigate to the furnisher.

90.     Ms. Bennett provided Equifax with the information it needed to confirm the pay status of the APM tradeline was inaccurate. Equifax ignored this information and failed to conduct a thorough investigation into her disputes or otherwise make her credit file accurate.

91.     As a direct result of this conduct, action and/or inaction of Equifax, Ms. Bennett suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; reduction in credit score; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

92.     The conduct, action, and/or inaction of Equifax was willful, rendering it liable for actual or statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

93.     Ms. Bennett is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to § 1681n.

WHEREFORE, Plaintiff, JAYNE RENE BENNETT, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, EQUIFAX INFORMATION SERVICES LLC; award Plaintiff her attorney's fees and costs; award pre-judgment and post-judgment interest at the legal

rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## COUNT V
### Violation of 15 U.S.C. § 1681e(b) as to
### Defendant, Experian Information Solutions, Inc. (Negligent)

94.    Plaintiffs re-allege and incorporate paragraphs one (1) through sixty-one (61) above as if fully stated herein.

95.    Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintains concerning Plaintiffs

96.    Experian allowed for a furnisher to report inaccurate account information to Plaintiffs' credit files.

97.    Upon information and belief, Experian does not allow its representatives to call consumers, like Plaintiffs, during the dispute process or call witnesses with knowledge about the dispute.

98.    Experian selects to just parrot the information provided by the Furnisher and to avoid conducting re-investigations.

99.    Experian chooses the illegitimate parroting of information despite consumers (like Plaintiffs) providing ample evidence.

100.   As a result of this conduct, action, and inaction of Experian, Plaintiffs suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; reduction in credit score; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

101.   The conduct, action, and/or inaction of Experian was negligent, rendering it liable for actual damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

102.   Plaintiffs are entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiffs, JAYNE RENE BENNETT and JANE B. HUGHES, respectfully request that this Court award actual damages against Defendant, EXPERIAN INFORMATION SOLUTIONS, INC.; award Plaintiffs their attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## COUNT VI
### Violation of 15 U.S.C. § 1681e(b) as to
### Defendant, Experian Information Solutions, Inc. (Willful)

103.   Plaintiffs re-allege and incorporate paragraphs one (1) through sixty-one (61) above as if fully stated herein.

104.    Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintains concerning Plaintiffs

105.    Experian allowed for a furnisher to report inaccurate account information to Plaintiffs' credit files.

106.    Upon information and belief, Experian does not allow its representatives to call consumers, like Plaintiffs, during the dispute process or call witnesses with knowledge about the dispute.

107.    Experian selects to just parrot the information provided by the Furnisher and to avoid conducting re-investigations.

108.    Experian chooses the illegitimate parroting of information despite consumers (like Plaintiffs) providing ample evidence.

109.    As a result of this conduct, action, and inaction of Experian, Plaintiffs suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; reduction in credit score; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

110.   The conduct, action, and/or inaction of Experian was willful, rendering it liable for actual or statutory damages and punitive damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

111.   Plaintiffs are entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiffs, JAYNE RENE BENNETT and JANE B. HUGHES, respectfully request that this Court award actual or statutory damages and punitive damages against Defendant, EXPERIAN INFORMATION SOLUTIONS, INC.; award Plaintiff their attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

### COUNT VII
### Violation of 15 U.S.C. § 1681i as to
### Defendant, Experian Information Solutions, Inc. (Negligent)

112.   Plaintiffs re-allege and incorporate paragraphs one (1) through sixty-one (61) above as if fully stated herein.

113.   After receiving Plaintiffs' disputes, Experian violated 15 U.S.C. § 1681i by: (i) failing to delete inaccurate information in Plaintiffs' credit files after receiving notice of such inaccuracies; (ii) failing to conduct a lawful and reasonable reinvestigation into Plaintiffs' disputes; (iii) failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiffs' credit

files; (iv) failing to review and consider all relevant information submitted by Plaintiffs in the disputes; and (v) relying upon verification from a source it has to know is unreliable.

114. Despite the large amount of information and documentation produced by Plaintiffs demonstrating the inaccurate reporting, Experian failed to conduct independent investigations into Plaintiffs' disputes and simply transferred the duty to investigate to the furnisher.

115. Plaintiffs provided Experian with the information it needed to confirm the pay status of the APM tradeline was inaccurate. Experian ignored this information and failed to conduct a thorough investigation into their disputes or otherwise make their credit file accurate.

116. As a direct result of this conduct, action and/or inaction of Experian, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; reduction in credit score; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

117. The conduct, action, and/or inaction of Experian was negligent, rendering it liable for actual damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

118.   Plaintiffs are entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to § 1681o.

WHEREFORE, Plaintiffs, JAYNE RENE BENNETT and JANE B. HUGHES, respectfully request that this Court award actual damages against Defendant, EXPERIAN INFORMATION SOLUTIONS, INC.; award Plaintiffs their attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## COUNT VIII
### Violation of 15 U.S.C. § 1681i as to
### Defendant, Experian Information Solutions, Inc. (Willful)

119.   Plaintiffs re-allege and incorporate paragraphs one (1) through sixty-one (61) above as if fully stated herein.

120.   After receiving Plaintiffs' disputes, Experian violated 15 U.S.C. § 1681i by: (i) failing to delete inaccurate information in Plaintiffs' credit files after receiving notice of such inaccuracies; (ii) failing to conduct a lawful and reasonable reinvestigation into Plaintiffs' disputes; (iii) failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiffs' credit files; (iv) failing to review and consider all relevant information submitted by Plaintiffs in the disputes; and (v) relying upon verification from a source it has to know is unreliable.

121.   Despite the large amount of information and documentation produced by Plaintiffs demonstrating the inaccurate reporting, Experian failed to conduct independent investigations into Plaintiffs' disputes and simply transferred the duty to investigate to the furnisher.

122.   Plaintiffs provided Experian with the information it needed to confirm the pay status of the APM tradeline was inaccurate. Experian ignored this information and failed to conduct a thorough investigation into their disputes or otherwise make their credit file accurate.

123.   As a direct result of this conduct, action and/or inaction of Experian, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; reduction in credit score; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

124.   The conduct, action, and/or inaction of Experian was willful, rendering it liable for actual or statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

125.   Plaintiffs are entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to § 1681n.

WHEREFORE, Plaintiffs, JAYNE RENE BENNETT and JANE B. HUGHES, respectfully request that this Court award actual or statutory damages and punitive damages against Defendant, EXPERIAN INFORMATION SOLUTIONS, INC.; award Plaintiffs their attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

### COUNT IX
### Violation of 15 U.S.C. § 1681e(b) as to
### Defendant, Trans Union LLC (Negligent)

126.   Plaintiffs re-allege and incorporate paragraphs one (1) through sixty-one (61) above as if fully stated herein.

127.   Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiffs.

128.   Trans Union allowed for a furnisher to report inaccurate account information to Plaintiffs' credit file.

129.   Upon information and belief, Trans Union does not allow its representatives to call consumers, like Plaintiffs, during the dispute process or call witnesses with knowledge about the dispute.

130.   Trans Union selects to just parrot the information provided by the Furnisher and to avoid conducting re-investigations.

131.   Trans Union chooses the illegitimate parroting of information despite consumers (like Plaintiffs) providing ample evidence.

132.   As a result of this conduct, action, and inaction of Trans Union, Plaintiffs suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; reduction in credit score; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

133.   The conduct, action, and/or inaction of Trans Union was negligent, rendering it liable for actual damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

134.   Plaintiffs are entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiffs, JAYNE RENE BENNETT and JANE B. HUGHES, respectfully request that this Court award actual damages against Defendant, TRANS UNION LLC; award Plaintiffs their attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from

further violations of these parts; and such other such relief the Court may deem just and proper.

## COUNT X
### Violation of 15 U.S.C. § 1681e(b) as to
### Defendant, Trans Union LLC (Willful)

135.   Plaintiffs re-allege and incorporate paragraphs one (1) through sixty-one (61) above as if fully stated herein.

136.   Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiffs.

137.   Trans Union allowed for a furnisher to report inaccurate account information to Plaintiffs' credit file.

138.   Upon information and belief, Trans Union does not allow its representatives to call consumers, like Plaintiffs, during the dispute process or call witnesses with knowledge about the dispute.

139.   Trans Union selects to just parrot the information provided by the Furnisher and to avoid conducting re-investigations.

140.   Trans Union chooses the illegitimate parroting of information despite consumers (like Plaintiffs) providing ample evidence.

141.    As a result of this conduct, action, and inaction of Trans Union, Plaintiffs suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; reduction in credit score; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

142.    The conduct, action, and/or inaction of Trans Union was willful, rendering it liable for actual or statutory damages and punitive damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

143.    Plaintiffs are entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiffs, JAYNE RENE BENNETT and JANE B. HUGHES, respectfully request that this Court award actual or statutory damages and punitive damages against Defendant, TRANS UNION LLC; award Plaintiffs their attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## COUNT XI
### Violation of 15 U.S.C. § 1681i as to
### Defendant, Trans Union LLC (Negligent)

144.   Plaintiffs re-allege and incorporate paragraphs one (1) through sixty-one (61) above as if fully stated herein.

145.   After receiving Ms. Bennett's disputes, Trans Union violated 15 U.S.C. § 1681i by: (i) failing to delete inaccurate information in Ms. Bennett's credit file after receiving notice of such inaccuracies; (ii) failing to conduct a lawful and reasonable reinvestigation into Ms. Bennett's disputes; (iii) failing to maintain reasonable procedures with which to filter and verify disputed information in Ms. Bennett's credit file; (iv) failing to review and consider all relevant information submitted by Ms. Bennett in the disputes; and (v) relying upon verification from a source it has to know is unreliable.

146.   Despite the large amount of information and documentation produced by Ms. Bennett demonstrating the inaccurate reporting, Trans Union failed to conduct independent investigations into Ms. Bennett disputes and simply transferred the duty to investigate to the furnisher.

147.   Plaintiff provided Trans Union with the information it needed to confirm the pay status of the APM tradeline was inaccurate. Trans Union ignored this information and failed to conduct a thorough investigation into her disputes or otherwise make her credit file accurate.

148.   As a direct result of this conduct, action and/or inaction of Trans Union, Ms. Bennett suffered damage, including without limitation, loss of the ability to

benefit from lower interest rates; loss of time; financial loss; reduction in credit score; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

149.   The conduct, action, and/or inaction of Trans Union was negligent, rendering it liable for actual damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

150.   Ms. Bennett is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to § 1681o.

WHEREFORE, Plaintiff, JAYNE RENE BENNETT, respectfully requests that this Court award actual damages against Defendant, TRANS UNION LLC; award Plaintiff her attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

**COUNT XII**
**Violation of 15 U.S.C. § 1681i as to**
**Defendant, Trans Union LLC (Willful)**

151.   Plaintiffs re-allege and incorporate paragraphs one (1) through sixty-one (61) above as if fully stated herein.

152.   After receiving Ms. Bennett's disputes, Trans Union violated 15 U.S.C. § 1681i by: (i) failing to delete inaccurate information in Ms. Bennett's credit file

after receiving notice of such inaccuracies; (ii) failing to conduct a lawful and reasonable reinvestigation into Ms. Bennett's disputes; (iii) failing to maintain reasonable procedures with which to filter and verify disputed information in Ms. Bennett's credit file; (iv) failing to review and consider all relevant information submitted by Ms. Bennett in the disputes; and (v) relying upon verification from a source it has to know is unreliable.

153.   Despite the large amount of information and documentation produced by Ms. Bennett demonstrating the inaccurate reporting, Trans Union failed to conduct independent investigations into Ms. Bennett disputes and simply transferred the duty to investigate to the furnisher.

154.   Plaintiff provided Trans Union with the information it needed to confirm the pay status of the APM tradeline was inaccurate. Trans Union ignored this information and failed to conduct a thorough investigation into her disputes or otherwise make her credit file accurate.

155.   As a direct result of this conduct, action and/or inaction of Trans Union, Ms. Bennett suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; reduction in credit score; and mental and emotional pain stemming from the anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

156.   The conduct, action, and/or inaction of Trans Union was willful, rendering it liable for actual or statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

157.   Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to § 1681n.

WHEREFORE, Plaintiff, JAYNE RENE BENNETT, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, TRANS UNION LLC; award Plaintiff her attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## COUNT XIII
### Violation of 15 U.S.C. § 1681 s-2(b) as to
### Defendant, American Pacific Mortgage Corporation (Negligent)

158.   Plaintiffs re-allege and incorporate paragraphs one (1) through sixty-one (61) above as if fully stated herein.

159.   APM furnished inaccurate account information to the CRAs and through the CRAs to all of Plaintiffs' potential lenders.

160.   After receiving Plaintiffs' disputes, APM violated 15 U.S.C. § 1681s-2(b) by (i) failing to fully and properly investigate Plaintiffs' dispute of the erroneous account status; (ii) failing to review all relevant information regarding same; (iii)

33

failing to accurately respond to the CRAs; and (iv) failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the representations to the consumer reporting agency.

161.   Plaintiffs provided all the relevant information and documents necessary for APM to have identified that the account status was erroneous.

162.   APM knowingly chose to follow procedures which did not review, confirm, or verify the account status was accurate.

163.   APM violated 15 U.S.C. § 1681s-2(b) by continuing to furnish inaccurate information to the CRAs after it had been notified that the information it was furnishing was inaccurate.

164.   As a direct result of this conduct, action, and/or inaction of APM, Plaintiffs suffered damages, including without limitation, loss of ability to benefit from lower interest rates; loss of time; financial loss; reduction in credit score; and mental and emotional pain stemming from the anguish, humiliation, apprehension in applying for credit, and the damages otherwise outlined in this Complaint.

165.   The conduct, action, and inaction of APM was negligent, rendering it liable for actual damages, in an amount to be determined by the Court pursuant to 15 USC § 1681o.

166.   Plaintiffs are entitled to recover costs and attorney's fees from APM in an amount to be determined by the Court pursuant to 15 USC § 1681o.

WHEREFORE, Plaintiffs, JAYNE RENE BENNETT and JANE B. HUGHES, respectfully request that this Court award actual damages against Defendant, AMERICAN PACIFIC MORTGAGE CORPORATION; jointly and severally; award Plaintiffs their attorneys' fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and grant all such additional relief as the Court deems appropriate.

**COUNT XIV**
**Violation of 15 U.S.C. § 1681 s-2(b) as to**
**Defendant, American Pacific Mortgage Corporation (Willful)**

167.    Plaintiffs re-allege and incorporate paragraphs one (1) through sixty-one (61) above as if fully stated herein.

168.    APM furnished inaccurate account information to the CRAs and through the CRAs to all of Plaintiffs' potential lenders.

169.    After receiving Plaintiffs' disputes, APM violated 15 U.S.C. § 1681s-2(b) by (i) failing to fully and properly investigate Plaintiffs' dispute of the erroneous account status; (ii) failing to review all relevant information regarding same; (iii) failing to accurately respond to the CRAs; and (iv) failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the representations to the consumer reporting agency.

170. Plaintiffs provided all the relevant information and documents necessary for APM to have identified that the account status was erroneous.

171.   APM knowingly chose to follow procedures which did not review, confirm, or verify the account status was accurate.

172.   APM violated 15 U.S.C. § 1681s-2(b) by continuing to furnish inaccurate information to the CRAs after it had been notified that the information it was furnishing was inaccurate.

173.   As a direct result of this conduct, action, and/or inaction of APM, Plaintiffs suffered damages, including without limitation, loss of ability to benefit from lower interest rates; loss of time; financial loss; reduction in credit score; and mental and emotional pain stemming from the anguish, humiliation, apprehension in applying for credit, and the damages otherwise outlined in this Complaint.

174.   The conduct, action, and inaction of APM was willful, rendering it liable for actual or statutory damages and punitive damages, in an amount to be determined by the Court pursuant to 15 USC § 1681n.

175.   Plaintiffs are entitled to recover costs and attorney's fees from APM in an amount to be determined by the Court pursuant to 15 USC § 1681n.

WHEREFORE, Plaintiffs, JAYNE RENE BENNETT and JANE B. HUGHES, respectfully request that this Court award actual or statutory damages and punitive damages against Defendant, AMERICAN PACIFIC MORTGAGE CORPORATION; award Plaintiff her attorney's fees and costs; award pre-judgment

and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, JAYNE RENE BENNETT and JANE B. HUGHES, respectfully request that this Court award judgment for actual, statutory, compensatory, and punitive damages against Defendants, EQUIFAX INFORMATION SERVICES LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION LLC; and AMERICAN PACIFIC MORTGAGE CORPORATION, jointly and severally; attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and such other relief the Court deems just and proper.

DATED this 12th day of August 2024.

Respectfully submitted,

*/s/ Octavio Gomez*
Octavio "Tav" Gomez, Esq.
Florida Bar #: 0338620
Georgia Bar #: 617963
Pennsylvania Bar #: 325066
The Consumer Lawyers PLLC
501 E. Kennedy Blvd, Ste 610
Tampa, Florida 33602

Cell: (813) 299-8537
Facsimile: (844) 951-3933
Tav@theconsumerlawyers.com

***/s/ Frank H. Kerney, III, Esq.***
Frank H. Kerney, III, Esq.
Florida Bar No.: 88672
Tennessee Bar No.: 035859
The Consumer Lawyers PLLC
501 E. Kennedy Blvd, Ste 610
Tampa, Florida 33602
Telephone: 844.855.9000
Facsimile: 844.951.3933
Frank@TheConsumerLawyers.com
*Attorney for Plaintiffs*